# Chrichton *v.* Hayles.

*Bill for Accounting and Discovery.*

(Decided February 1, 1912.   57 South. 696.)

1. *Accounting; Equitable Action; Bill.*—A bill for an accounting based on transactions between a complainant and intestate of respondent, which alleges that the intestate platted three tracks of land and employed complainant under three separate agreements to sell lots for a percentage, net on sales, after the intestate had re-

ceived the amount of the price, together with the expenses incurred in preparing the property for market, that most of the lots were sold for part cash, and part deferred payment, that the cash payments were turned over to the intestate, but in several instances, complainant retained installments of payment with intestate's knowledge; that in some instances sales were cancelled for default in payment, and the lots resold by complainant to other purchasers; that the intestate expended sums besides the purchase money in subdividing the tracts and in preparing the lots for market, praying for an accounting, states a cause of action for an accounting on the theory of a complicated account.

2. *Same; Demand.*—Where an account is complicated, giving rise to an independent equity, a preliminary personal demand for an accounting is not necessary before resorting to equity.

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by John F. Hayles against Hermenia Chrichton, as administratrix for an accounting against her intestate. From a decree overruling demurrers to the bill, respondent appeals. Affirmed.

HENRY CHAMBERLAIN, for appellant. No brief reached the Reporter.

GREGORY L. & H. T. SMITH, and D. B. COBBS, for appellee. No brief reached the Reporter.

SOMERVILLE, J.—The bill is filed against appellant, as administratrix of the estate of her intestate, and seeks for an accounting, based upon certain business transactions between complainant and the said intestate, and also for discovery in aid thereof.

The facts and conditions shown by the bill are substantially as follows: Prior to May 27, 1907, the intestate owned two tracts of land known as the Millville and Toulminville tracts, which he laid off into lots and placed on the market for sale, and complainant had sold a large number of them for him from the Millville tract only. On the date mentioned, a written agreement was made between them, to wit:

Mobile, Alabama, May 27, 1907.

"This memo of agreement between J. F. Hayles and myself. I agree to pay him 25 per cent. net on sales of lots in South Millville and Toulminville Heights after I receive the amount of the purchase price of property together with the expenses made necessary in preparing the same for market. Legal expenses, etc., as shown by ledger in which said accounts are kept. Said lots are to be sold at prices agreed to by me. This agreement to last two years from date. [Signed]    H. R. Crichton.    J. F. Hayles."

Under this agreement, complainant sold a large number of lots from the Toulminville tract. Subsequently the intestate purchased a third tract of land, known as the First Addition, which he has also laid off into lots and placed on the market; and complainant sold for him from this tract a large number of lots. The reasonable value of his services in selling all the lots, not provided for by the written contract, was 25 per cent. of the selling price of the lots.

A few of the lots in each of the tracts named were sold for cash; but most of them were sold partly for cash and partly on deferred payments. Cash payments were turned over to the intestate, but in several instances complainant retained installment payments with the knowledge of the intestate, who also, from time to time, made payments to complainant on account of his commissions; all of these being charged to his general account, without reference to any particular sales. On the deferred payments referred to, various purchasers made payments from time to time, some to the intestate, and some later to the respondent; while, for defaults in some of them, the sales were canceled, and the lots resold by complainant to other parties.

The intestate expended considerable sums, besides the purchase money, in subdividing the tracts and preparing the lots for market, of which he kept an account.

Complainant does not know the amounts or dates of the various deferred payments; nor the amount of said expenses, of which he himself kept no account, and depends upon getting them from respondent. It is charged, however, that upon an adjustment of the several accounts a balance will remain due to him.

The bill alleges that intestate died in February, 1909, and that respondent "was thereafter appointed as the administratrix of his estate."

Paragraph 6 of the bill summarizes the conditions recited, as a predicate for discovery, as follows: "(6) By reason of the fact that there were a large number of small cash payments made upon the purchase price of the lots sold, and many similar payments made upon the notes given for deferred payments of the purchase money for lots sold on credit, and the further facts that a large number of these payments were not made promptly at the time that they became due, but at irregular periods, and the fact that the sales of some of the lots were rescinded, and such lots resold, and the fact that there is confusion and error in the account kept by H. R. Crichton and defendant of the expenses paid out by said H. R. Crichton and defendant, Hermenia Crichton, his wife, in preparing said lands for market, and the fact that complainant has no way of ascertaining when the said H. R. Crichton received payment of the amounts, all of the purchase money and expenses upon said property, rendering the ascertainment of the amount due complainant dependent upon a complicated account which has been kept only by said H. R. Crichton and defendant, complainant is unable to correctly state such account without discovery from the de-

fendant, and is, for said several reasons, remediless, except in a court of equity."

The general principles declaratory of the equitable jurisdiction of accounting and discovery have often been stated and applied by this court, and it is not necessary to restate or discuss them.—*Dickinson v. Lewis,* 34 Ala. 638; *Shackelford v. Bankhead,* 72 Ala. 476; *Virginia, etc., Co. v. Hale,* 93 Ala. 542, 9 South. 256; *Wood v. Hudson,* 96 Ala. 469, 11 South. 530; *Dargin v. Hewitt,* 115 Ala. 510, 22 South. 128; *Pollak v. H. B. Claflin Co.,* 138 Ala. 644, 35 South. 645; *Hulsey v. Walker Co.,* 147 Ala. 501, 40 South. 311; *Hall v. McKeller,* 155 Ala. 508, 46 South. 460; *Friedman v. Fraser,* 157 Ala. 191, 47 South. 320.

It is evident that the bill does not exhibit a case of *mutual* accounts; and that in this respect the equity of the bill must depend upon the fact of confusion or complication; and this to such an extent as to render it fairly impracticable to present a clear and satisfactory statement of the account in the ordinary way in a court of law.

It must be noted that there were three series of sales, extending through several years, under separate agreements, upon which commissions have been paid indiscriminately. If this were all, however, there would be no apparent difficulty in computing the aggregate of the commissions, and placing upon respondent the duty, in a court of law, of showing the amount of the payments to be credited thereon. But the case is quite otherwise. It becomes necessary, under the written contract, in order to show that commissions, if any, are due to complainant, to first show that the purchase money actually collected on the sales made thereunder exceeds the first cost and preparatory expenses paid or incurred in respect to the two tracts concerned. And, to deter-

mine when the commissions became due and began to bear interest, it must first be shown at what date the aggregate of the payments, cash and deferred, equaled and balanced the amount of purchase money and expenses. To do this correctly under the conditions shown may well tax the skill of a trained accountant, and certainly cannot be presented in intelligible detail to the average jury.

Besides all this, another account must be stated to show the commissions earned under the other contracts; this must be added to the first sum, and from the aggregate must be subtracted the sum of all the partial payments, with due allowances for interest pro et con. Moreover, the bill shows that the greater part of the information necessary in the statement of the account is not with complainant, and is exclusively with respondent, as the representative of intestate and the custodian of his property and business books and documents, enhancing for him the difficulties of a situation already difficult enough.

Upon a critical examination of the showings made by the bill we think they clearly indicate the necessity for an equitable accounting. In this view of the case, we need not consider whether the allegations of the bill show, also, an independent equity to have the discovery prayed for, since they are entirely sufficient for the incidental purpose of aiding the account.

Where, as here, the account is complicated, giving rise to an independent equity, we are aware of no rule which requires a preliminary personal demand upon the other party before resorting to a court of equity. Other points made by the demurrers are without merit, and, not being argued by counsel, will not be considered.

The decree of the chancellor is affirmed.

Affirmed. All the Justices concur.