**EDGERTON et al. v. ARMOUR & CO. et al.**

No. 10245.

United States District Court
S. D. California, Central Division

Dec. 12, 1950.

550

Milford S. Zimmerman, Los Angeles, Cal., for plaintiffs.

Gibson, Dunn & Crutcher, Norman S. Sterry, Henry F. Prince, and Frederic H. Sturdy, all of Los Angeles, Cal., for defendants.

HALL, District Judge.

The plaintiffs in this case are three named individuals suing on behalf of themselves and on behalf of all others (about 400) similarly situated, as a class. It is alleged in the complaint that the plaintiffs and all members of the class are the stockholders and successors in interest to the stockholders of Food Products Corporation, a California corporation. They seek an accounting in respect to all of defendant's activities insofar as they relate to a certain contract, and various amendments thereto, whereby Food Products Corporation (successor in interest to the original contracting party, Dried Food Products Company)

transferred certain processes, formulas and patents relating to the manufacture of dried egg products to defendant Armour and Company, who in turn agreed to pay to Food Products or its successors in interest certain sums based on the proceeds derived from the manufacture and sale of said products. While there were actually several different writings, they constitute to all intents and purposes only one contract and will be so treated herein. It was further provided in said contract that Food Products might dissolve and assign to its stockholders the corporation's interest in and to said contract and its rights thereunder, provided said contract would be transferred to a responsible trustee to receipt for all moneys thereafter becoming payable upon the interest of Food Products.

In due course, Food Products was dissolved and all of its assets including all rights under said contract, were distributed on liquidation, by assignment or other means of transfer, to the then stockholders of Food Products. It was agreed in said contract that Armour and Company would settle its account under said contract with Food Products or its successors in interest by payments to Citizens National Trust and Savings Bank for the account of Food Products or its successors in interest.

The main point raised by the motion to dismiss in this case is that the jurisdictional amount required in diversity cases is not present. Defendant contends that this suit is at best a "spurious" class action in which the claims of the members of the class may not be aggregated in determining the jurisdictional amount and that it is apparent that no individual claim could or does exceed $3,000, exclusive of interest and costs. Plaintiffs contend, on the other hand, that this is a "true" class action in which the claims of the members of the class may be aggregated in determining the amount in controversy. There is no allegation in the amended complaint that the plaintiffs individually can satisfy the jurisdictional amount and no assertion to that effect is made in any of the briefs. Therefore, it may be assumed, for the purpose of this motion, that the jurisdictional amount may be satisfied only by the aggregation of the claims of the plaintiffs and the members of the class they seek to represent.

Upon hearing defendant's motion to dismiss the complaint as originally filed, I granted the motion and held that this was not a "true" class action and that the claims could not be aggregated, under the authority of Giesecke v. Denver Tramway Corporation, 1949, D.C., 81 F.Supp. 957, and Thomson v. Gaskill, 1942, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951. The complaint was amended in particulars which does not affect the question raised as to aggregation of claims to satisfy the jurisdictional amount, and another motion to dismiss was filed on the same grounds. Upon argument I became doubtful of the correctness of my former decision and order, and have reexamined the entire question. For reasons which will shortly appear, I am convinced I was in error in the former ruling.

Whether the individual claims involved in this suit may be aggregated in a class action depends upon the type of class action brought herein. The type of class action, in turn, depends upon the character or nature of the right sought to be enforced by the plaintiffs. Rule 23(a) of the Fed.Rules Civ.Proc., 28 U.S.C.A., describes the character of the rights which may be enforced by class actions as those which are, "(1) joint, or common, or secondary in the sense that the owner of the primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it; (2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or (3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

Inasmuch as the defendant concedes that the claims in a "true" class action, as provided for in clause (1) above, may be aggregated, the issue here is limited to the question of whether the plaintiffs in this case are asserting a right or claim which is joint, or common or secondary.

Whether or not interests are held in common or otherwise is a matter of substantive law. Whether or not such interests

may be represented in a class action is a matter of procedure and is governed by the Federal Rules of Civil Procedure.

Generally an interest in common arises whenever a right is owned concurrently by two or more persons under a conveyance or under circumstances which do not either expressly or by necessary implication call for some other form of co-tenancy or ownership. 62 C.J. 410, and cases cited under footnote 48. Section 686 Civil Code of California provides, in its pertinent part, that, "Every interest created in favor of several persons in their own right is an interest in common * * * unless declared in its creation to be a joint interest * * *". Such definition is essentially no different than the general description of an interest in common as set forth in Corpus Juris above mentioned.

The situation here fits squarely into the general definition of an interest in common and particularly into the definition set forth in the Civil Code of California, Section 686.

The primary rights of the former stockholders against defendant exist under and by virtue of the single contract.

The terms of the contract in respect to the dissolution of Food Products and the assignment of its interest in the contract to the stockholders deserve examination. Armour and Company agreed to the dissolution and assignment upon the condition that the successors in interest accept quarterly payments in one sum through a single bank as agent. It is reasonable to assume that the purpose of this provision was to preserve the original character of the obligation or right which was a single obligation or duty owed to the corporation. There is nothing in the agreement nor in any of the circumstances surrounding its execution which indicates that the interest of the plaintiffs was to be other than in common. While each of the plaintiffs and each member of the class to which plaintiffs belong own their proportionate share in their own right and may have disputes among themselves as to the amount or value of their proportionate rights under the contract, the defendant can have no controversy with any of them in the suit on that point from the face of the complaint. The liability claimed by the plaintiffs and their class against defendants is based on the single contract, and such liability either does or does not exist, without regard to the proportions or values of each or any of the more than 400 beneficiaries thereof. The legal rights of no one of the plaintiffs or of their class to an accounting by defendant can rise above the rights of any other member of that class under the contract. Their rights as between themselves may be different in amount, but none can be greater or less than the contract gives to all. That is to say, the right of each plaintiff to an accounting by defendant is measured by the obligation of the defendant under the contract to account to all without regard to the share of each. Under the terms of the contract, and the facts alleged in the complaint concerning the dissolution of the corporation, the assignment to stockholders, and the appointment of a trustee, it is difficult to see how the right of any individual member of the class for an accounting by the defendant could be ascertained without at the same time determining the rights of all other members of the class to an accounting. The obligation of the defendant is to make an accounting, not to make 411 accountings. The terms of the contract are entirely inconsistent with any idea that the rights under the contract should be treated as separate or individual rights in each of the stockholders or successors in interest. Such terms are consistent, however, with the idea that the interests or rights under the contract should be held as a whole or unit in which the beneficial rights of the assignees are common. It would seem that a provision calling for payments in a lump sum to a single agent for the benefit of all should likewise require any enforcement of that right to be brought in a single action for the benefit of all concerned rather than by separate actions on behalf of each individual. The terms of the contract itself, therefore, lead to the conclusion that the right sought to be enforced is a single right in which plaintiffs and the members of the class they seek to represent have a common and undivided interest.

Had these plaintiffs brought this suit before the dissolution and assignment to stockholders it would clearly have been a "true" class action under clause (1) of Rule 23. Moore's Federal Practice, Volume 22 at page 2221, in discussing "true" class actions under clause (1) of Rule 23, states that, "Typical of a secondary action is a suit by stockholders to enforce a corporate right." The plaintiffs, had they sued while the corporation was in existence, would have been suing to enforce a right in the corporation and incidentally a right held derivatively by the stockholders as a group. City of Davenport v. Dows, 1873, 18 Wall. 626, 85 U.S. 626, 21 L.Ed. 938. If such a derivative action had been brought it is apparent that the right sought to be enforced would be a *single right* in the corporation in which the plaintiffs and other shareholders had a *common* and *undivided interest*. No one stockholder could have had any separate or individual right in the contract or in its enforcement. The interest or right would be only a single right which could be enforced for the benefit of the corporation and indirectly for themselves. While the plaintiffs and their class are now the owners of the primary right, the dissolution of the corporation and the assignment of the contract to its stockholders placed the corporation in the position where it could not, and cannot, as a legal entity, bring suit to enforce the rights under the contract. Thus the legal effect of the dissolution and assignment is the same as a refusal by the corporation to enforce the rights under the contract. The stockholders, i. e., the plaintiffs and their class, are in precisely the same position, by such dissolution and assignment as they would be if the corporation were yet in existence and refused to enforce the contract. The corporation by its dissolution voluntarily placed itself where it is impossible for it to enforce the rights under the contract, which is tantamount in legal effect to a refusal. And the change in ownership by the assignment to its stockholders did not change the nature and character of the common and undivided rights existing under the single contract as had formerly been in the plaintiffs and their class as stockholders while the corporation was in existence.

As noted hereinbefore, the defendant concedes that in a "true" class action the claims can be aggregated to make the jurisdictional amount. And there is nothing in Thomson v. Gaskill, 1942, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951, to the contrary. On reexamination of that case it is noted that the terms of the contract under which the plaintiffs sought relief were not set forth or before the court. The case was remanded with opportunity to plaintiff to amend, as obviously there could be no determination of the question whether their rights were joint or common until the contract upon which those rights were based was before the court. That situation is not present here.

Giesecke v. Denver Tramway Corporation, D.C.Del.1949, 81 F.Supp. 957, recognizes the rule that in a "true" class action the claims may be aggregated, but held that the value of individually held preferred stock could not be aggregated for the jurisdictional amount as in a "true" class action. The case is not applicable to the situation here for several reasons: (1) there, the stockholder was trying to enforce a right against the corporation in which he held stock, whereas here the stockholder is trying to enforce a claimed right which the corporation, in which he held stock, had against another corporation in which the plaintiff and the members of their class are not stockholders; (2) preferred stockholders may have different rights as individuals due to different dates of acquisition of stock and the like, while here, the rights of the plaintiffs and their class were created at the same time and by the same act of defendant, i. e., by the same contract; and (3) preferred stockholders may prefer *not* to have a dividend (which the plaintiff sought) but rather to leave the earnings of stock to be handled and invested by the management of the corporation. Even if the case is not thus distinguishable, I am not prepared to adopt the narrow and strict test of what constitutes a true class action as stated therein, 81 F.Supp. 962, in the following language: "The test in the present case is

whether the present plaintiff, if he had owned sufficient stock in his own right to satisfy the jurisdictional requirement, could have brought suit in his own name alone to compel the declaration and payment of the dividend. If he could, then his interest is a separate interest and the action does not fall within Rule 23(a) (1)."

▆▆ The class action device is a creature of equity.[1] Equitable remedies must be kept sufficiently flexible to meet such unconceived situations as the ingenuity of man or the vagaries of circumstances might create. The application of such a rigid test would or might preclude a class action in a situation which might leave a group remediless, where the interest of each member might be separate and severable from the rest, but where a common wrong may have been done to each and all of them and each and all of them might be entitled to the enforcement of a joint or common or secondary right, and where none of them could by himself reach the jurisdictional amount necessary in diversity cases.[2] In any event the plaintiffs in the instant case satisfy all the requirements of a true class action as hereinbefore pointed out.

The further requirements of Rule 23 as to the impracticability of bringing all of the parties before the court and the adequacy of the representation by those bringing the suit are sufficiently met in this case. The impracticability of bringing 411 persons before the court or compelling them to bring 411 different actions in the state of residence of each or go to Illinois, the state of defendant's incorporation and bring suit justifies the use of that element of the class action device in this case. In view of the finding that the right sought to be enforced here is common to all, and in addition, the fact that 20% of the class have duly authorized plaintiffs to represent them in this action, warrant a holding from the complaint that there will be an adequate representation of the rights of those who are absent.

All the tests of a true class action being met by the complaint makes it obvious that the other members of the class to which plaintiffs belong are neither indispensable nor necessary parties.

It follows that the motion to dismiss on the grounds of lack of jurisdictional amount, and of the absence of necessary parties should be and is denied.

## Defendant's Motion No. 2.

Defendant's Motion No. 2 to dismiss for failure to state a claim is based upon the ground that plaintiffs are not the owners of the entire cause of action sought to be pleaded and upon the further ground that plaintiffs have not availed themselves of their contractual right to inspect the books and records of Armour and Company and have not alleged that the right to examine the books and records has ever been requested and refused.

▆ The assertion that the plaintiffs are not the owners of the entire cause of action sought to be pleaded here cannot be sustained in view of the allegations of the amended complaint that Food Products Corporation before dissolution was the sole and entire owner of the interests under the contract, and that immediately following

1. Hansberry v. Lee, 1940, 311 U.S. 32, 41, 61 S.Ct. 115, 85 L.Ed. 22; Montgomery Ward & Co. v. Langer, 8 Cir.1948, 168 F.2d 182, where the court said at page 187: "The usefulness of the device (class actions) in its new environment (Rule 23) will depend largely upon the attitude of the courts. If the device is to be loaded down with arbitrary and technical restrictions, it will serve no very useful purpose in the enlarged field. If, on the other hand, the courts will disregard the ancient and often arbitrary distinctions between actions at law and suits in equity and will permit the Rule to operate in all cases to which it justly and soundly may be applied, it will serve its intended purpose. Like most procedural devices, its usefulness is susceptible to being nibbled away by those who regard it as an unwelcome stranger in an unsuitable environment."

2. Under Section 384 of the California Code of Civil Procedure each of the plaintiffs living in California could severally commence an action for the enforcement of his rights under the contract, in the State Courts of California. But as pointed out, F.R.C.P. 23 controls over such state procedural remedy.

the liquidation of Food Products Corporation all of the sole and entire interest formerly held by said corporation in said contract was held by and owned in its entirety by the stockholders of Food Products Corporation. The further allegation that the class which plaintiffs represent holds and owns, in its entirety, the sole and entire interest formerly held by Food Products Corporation in said contract, either as a stockholder of Food Products Corporation at the time of its liquidation or as successors in interest to the stockholders of such corporation at the time of liquidation, indicates that the plaintiffs and the members of the class they seek to represent are the sole owners of the cause of action here pleaded.

The second ground upon which defendant bases this motion is that plaintiffs have a contractual right to inspect the books and records of defendant, that that right has not been exercised, and that there is no allegation that plaintiffs have ever requested such inspection and received a refusal thereof by defendant.

The briefs of the parties treat, as one question, the failure to exercise the contractual right to inspect, and the question of whether a demand for an accounting and its refusal is a prerequisite to an action for an accounting in equity. Assuming that the briefs of the parties may expand the ground of the motion in this manner, there are two questions raised here: (1) Must the plaintiff exercise or request the contractual right to inspect before bringing this action; and, (2), must there be a demand and refusal of an accounting before this action may be brought?

The plaintiffs contend that an inspection of the books and records as provided for in the contract would not provide the information they seek to obtain in this action and would not disclose the amounts alleged to be due plaintiffs. The contract, including the various agreements, provided that Armour and Company would keep accurate books and records in its Produce Division as to the business conducted, which books and records would be open to inspection during reasonable business hours by any duly authorized representative of Dried Foods or Food Products or twenty percent (20%) or more in interest of the successors in interest of Food Products.

It cannot be determined at this point in the case just what an inspection of the books and records of Armour and Company would reveal, but it does appear that such an inspection would not afford the detailed information upon which the plaintiffs base their claims herein nor would it be equivalent to a full and complete accounting in equity. It is alleged in the complaint that the books and records would not disclose data as to the use of machinery, equipment, patents, applications for patents, formulas and processes, nor would the books disclose data as to all contracts and operations entered into by defendant with respect to the purchasing, manufacturing, processing and selling of dried-egg products. On this motion to dismiss, these allegations must be taken as true, and if they are so considered, the inspection as provided for in the contract could not afford complete relief.

A further point to be considered here is that defendant has ostensibly been making payments to the trustee under the terms of the contract. In a sense, it can be said that these payments have resulted from an accounting by defendant of the amounts due to plaintiffs and that the books open to inspection would reveal that the amounts paid to the trustee were the very amounts that these books reflected. If this is true, then an inspection of such books would be a useless procedure on plaintiffs' part and would still require an examination of the additional books, transactions and activities of defendant, which plaintiffs allege is necessary in this case for a complete determination of the amounts alleged to be due them.

■ For these reasons it is felt that plaintiffs are not required to exercise their contractual right to inspect the books and records of defendant before instituting this action for an accounting.

Coming next to the question of whether a demand for an accounting and a refusal to comply with such demand is a condition precedent to the maintenance of this action, it readily becomes apparent that there is a

great conflict of authorities on the subject of the necessity of a demand before suit. This conflict, to some extent, appears to stem from a confusion of the old common-law action of account with an accounting in equity. The distinction between the two actions, so far as a demand is concerned, was recognized in Wiegardt v. Becken, 1941, 8 Wash.2d 568, 113 P.2d 60, 143 A. L.R. 1208, in a suit for an accounting in respect to the defendant's business, where the court held that a demand for an accounting was a prerequisite to the maintenance of the suit brought there. The court distinguished the case before it from the case of New Haven Sand Blast Co. v. Dreisbach, 102 Conn. 169, 128 A. 320, 328, which was a suit in equity for an accounting, among other things, and it was pointed out that no demand was necessary in the New Haven case because it was a suit in equity and not a common-law action of account wherein a demand was necessary.

However, the problem is further complicated by a conflict in the authorities within the two types of actions for an accounting, some holding that a demand is necessary in each and others holding that no demand is necessary.

The present action for an accounting meets the requirements for equity jurisdiction in that there are many and numerous items extending over a long period of time which must be examined. The many transactions, activities and dealings which must be examined here could not be properly and satisfactorily adjusted by a jury in an action at law on account. The question is thus narrowed to a determination of whether a demand is necessary in this equitable action for an accounting.

Although, as pointed out above, it has in some cases been held that an accounting in equity is dependent upon a previous demand and refusal, it has also been held that such demand and refusal are not necessary where the accounting is complicated. In Chrichton v. Hayles, 1912, 176 Ala. 223, 57 So. 696, it was held that a bill for an accounting and also for discovery in aid thereof stated a cause of action on the theory that the complicated nature of the account gave rise to an independent equity which

did not necessitate a previous demand for an accounting as a condition to resorting to equity. That case involved an agreement whereby plaintiff was to sell certain lots for defendant and receive a percentage of those sales as his reimbursement. Plaintiff sold various lots for defendant, some for cash and some on credit, and it was alleged that plaintiff did not know the dates and amounts of the deferred payments, nor the amount of the expenses to defendant and that the information rested exclusively with the defendant. On these grounds the complexity was held such that no demand was necessary.

In New Haven Sand Blast Co. v. Dreisbach, supra, an accounting was sought, among other things, in respect to various activities carried on by defendant in the operation of a sales corporation. In answer to the contention that in the absence of a demand and refusal to account no accounting could be decreed, the court pointed out that the action was not a common-law action of account based on a contract, in which it was usual to allege a demand and refusal, but was a bill in equity that an account be taken, and the right to the equitable relief demanded did not depend on a demand and refusal, but upon the facts alleged and proved. In such an action it was said that it was not necessary or usual to allege a demand and refusal.

Other cases to the effect that a demand and refusal are not necessary to sustain a suit for an accounting in equity are: Standard Founders, Inc. v. Oliver, 1935, 168 Md. 317, 178 A. 223 at 232, 233 (wrongful diversion of funds from a corporation); McClung v. Capehart, 1877, 24 Minn. 17 (accounting for moneys received after dissolution of partnership); Hanna v. McLaughlin, 1902, 158 Ind. 292, 63 N.E. 475 (accounting against partner in respect to partnership assets of extinct partnership); Mayr v. Nelson Chesman & Co., 1915, 195 Ill.App. 587 (accounting re advertising contract where accounts were numerous and complicated and fraud was alleged); Gleason v. Ritchie, 1944, 267 App.Div. 447, 47 N.Y.S.2d 38 (account for rents collected and not paid over).

The defendant contends that these cases merely announce that no demand is necessary where it is obvious from the conduct of the parties that a demand would have been denied, for example, where fraud or breach of trust was alleged or where a refusal to account was alleged in the complaint. If the requirement of a demand turns upon the probability of compliance with such demand, then fraud or breach of trust would or might, at least, indicate that a demand would be denied and an allegation of a refusal, it seems, would infer that a demand had been made. That these factors would influence a decision on the question of a demand is clear, but the language of the courts in the above cases indicates that the ground of their decision was based upon the complexity of the accounts rather the presence of fraud, breach of trust or an allegation of a refusal. The cases of Chrichton v. Hayles and Standard Founders v. Oliver, referred to above, in particular indicate that complexity was the ground for equity jurisdiction and for permitting the action for an accounting without a prior demand and refusal being alleged.

Plaintiffs claim that the cases cited by defendant are actions at law in which no demand is necessary. This appears to be true of Weigardt v. Becken, supra, in view of the court distinguishing that case from one in equity where a demand was not necessary. In Miller v. Klingman, 1930, 156 Miss. 795, 126 So. 838, the accounting period involved extended only over the cotton season of 1926-1927, and there was quite obviously no reason for the detailed accounting sought by plaintiff, and the facts were such that the information sought to be obtained was as readily available to plaintiff as defendants in view of defendants' repeated offers to go over the books with plaintiff or permit plaintiff's auditors to go over their books. The case did not turn specifically on the question of a demand nor was the question apparently raised at all. In Bushnell v. McCauley, 1906, 7 Cal. 421, it did not specifically appear whether the action was one at law or in equity, but the simplicity of the facts and the matters involved would indicate that it was an action

at law. In Starks v. Field, 1939, 198 Wash. 593, 89 P.2d 513, on appeal from a judgment dismissing the action, the court stated that a demand was necessary in addition to complexity in order to maintain an action for an accounting. This indicates the conflict referred to earlier that exists within that class of cases designated suits in equity for an accounting.

The object and reason behind the requirement of a demand before suit becomes clear in a case where such demand is an integral part of the cause of action, as when the duty to pay or to do some act, does not arise until after demand. In such cases a demand would be necessary before the cause of action would arise. A case might also arise where a demand should be required before suit where it appeared that it would be unjust and inequitable to subject defendant to litigation without first notifying him of the claim. The possibility of narrowing the issues or shortening the trial are additional reasons supporting the requirement of a prior demand.

■ However, in the case at bar the complexity itself gives rise to an independent equity. And in view of the radical difference as to the state of accounts here as shown by the allegations of the complaint, it appears that there would be no probability of a settlement except by the intervention of compulsory process. Under these circumstances it is felt that the plaintiffs in this case are not required to first request or demand an accounting prior to bringing suit.

The motion to dismiss based on the failure to allege complete ownership of the cause of action, to exercise the contractual right to inspect, and to demand an accounting should be and is denied.

### Defendant's Motion No. 3

■ Defendant's Motion No. 3 for an order requiring plaintiffs to join necessary parties should be and is denied in view of the finding that plaintiffs and the members of the class they represent are the owners of the entire cause of action pleaded here and that the allegations of the complaint fulfilled the requirements of a true class action.

Defendant's Motion No. 4

Defendant's Motion No. 4 to strike paragraphs 5, 7, 9 and 12 of plaintiffs' amended complaint should be and is denied for the reason that the agreement involved in this action is sufficiently pleaded according to its legal effect.