# Electric Lighting Company of Mobile v. Mobile & Spring Hill Railway Company.

*Bill in Equity for Injunction, and for Specific Performance of Contract.*

1. *Bill in equity for specific performance of contract; sufficiency of prayer.*—A prayer, in a bill in equity, for an injunction, to be continu-

[Electric Lighting Co. of Mobile v. Mobile & Spring Hill Railway Co.]

ed during the term of the contract which is the subject matter of controversy, restraining the defendant from threatened breaches of the contract, is the equivalent of a prayer for specific performance, and converts the bill, in substance and spirit, into a bill of that character, though there is no special prayer for the enforcement of the performance of the contract

2. *Specific performance of contract; when will not be decreed.*—Where a contract, having several years to run, imposes on the complainant the rendition of continuous mechanical services, demanding the highest degree of skill, and necessitating the expenditure of considerable sums of money, and on the defendant the duty of maintaining costly machinery, keeping it in repair, and the daily use of cars moved by electricity on the line of its railway, a court of equity will not enjoin threatened breaches of the contract, or decree its specific performance.

3. *Same; adequate remedy at law.*—A court of equity will not enjoin threatened breaches of a contract, or decree its specific performance, when the complainant has an adequate remedy at law, and by the terms of the contract, for defaults of the defendant in complying with its provisions, has the unqualified right to terminate it.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. W. H. TAYLOR.

The bill in this case was filed October 10, 1894, by the appellant, the Electric Lighting Company of Mobile, against the appellees, the Mobile & Spring Hill Railway Company and one J. H. Bleoo, the general manager of said railway Company. The opinion states the substance of the material stipulations of the contract set forth in the bill. The bill averred performance of the contract on the part of the complainant, but that said defendant company has notified complainant that on and after Monday, October 8, 1894, it will discontinue the use of the power furnished by complainant, and will ground its lines or wires, so as not to receive the power provided for by said contract, and threatens to remove the generators and switch board placed in complainant's station to receive the power furnished under said contract, and also threatens to discontinue the use of the power furnished by complainant. It was further averred that said defendant also threatens that it will connect its said wires with the electrical apparatus and machinery of another company or person, so as to turn thereon an additional current of electricity on the same lines and wires on which complainant's current is turn-

ed, and, if that is done, it will more than likely result in destroying the electrical apparatus of complainant, and causing irreparable damage to its engine and machinery. The bill further alleges that in carrying out said threat to ground the wires of defendant receiving the electrical current, complainant's engine, used in furnishing said power, would receive a reactionary shock, liable to break or wreck it, and cause irreparable damage to said engine and the electrical apparatus connected therewith; that if defendant should remove the generators and switch board placed in complainant's station to enable it to furnish said power, the complainant could not carry out its said contract; that is is a part of said contract that they should be placed and kept there for that purpose. The bill further alleges that the president and secretary of such company reside in the city of New York, and that the entire management of said company is placed in the hands of one J. H. Bleoo, who is the active party in said acts and threats above set forth in preventing complainant from carrying out a specific performance of said contract. The bill alleged that the company is insolvent, and that complainant had no adequate remedy at law for the said injurious consequences of a breach of said contract and in carrying out said threats. The prayer of the bill was as follows: "And complainant further prays that you will grant to it the state's writ of injunction enjoining and restraining the said Mobile and Spring Hill Railway Company and the said J. H. Bleoo, their agents and servants, from grounding the lines or wires of said railway company, or from doing any act to prevent the electric current furnished by complainant from passing through the lines and roadbeds of said railway company, and that said railway company and said J. H. Bleoo be enjoined and retrained from removing the generators and switch board from the station of complainant, and also from disconnecting the lines or wires of said railway company from the machine, lines, or wires through which said current passes, or from connecting their said wires or lines with the plant or electrical apparatus of any other person or company during the continuance of said contract, and at the hearing that your honor will extend said injunction to the term of said contract." Upon the filing of the bill and giving of the bond as ordered, an injunction was issued

in accordance with the prayer of the bill. The defendants moved to dissolve the injunction, on the ground, among others, of want of equity in the bill. The court granted this, motion, and ordered the injunction dissolved. The complainant appeals from this decree, and assigns the same as error.

OVERALL, BESTOR & GRAY, for appellant cited *Chambers v. Alabama Iron Co.*, 67 Ala. 355; *East & West R. Co. v. East Tennessee, Va. & Ga. R. Co.*, 75 Ala. 275; *Cox v. Mobile & Girard R. Co.*, 44 Ala. 614; *Casey v. Holmes*, 10 Ala. 785; *Consolidated Electric Light Co. v. Peoples Electric Light Co.*, 94 Ala. 372; *Scholze v. Steiner*, 100 Ala. 152.

FRANCIS B. CLARK, Jr. and LE VERT CLARK, *contra*, cited 22 Am. & Eng. Ency. of Law, 931, 1018; *Irwin v. Bailey*, 72 Ala. 467; *Moses v. McLain*, 82 Ala. 370; *Iron Age Publishing Co. v. Western Union Tel. Co.*, 83 Ala. 509; *McBride v. Sayre*, 86 Ala. 462; Story's Eq. Juris., §§ 1109, 1112, 1120, 1162; Pomeroy on Contracts § 162; 3 Brick. Dig. p. 361, § 423; 3 Pomeroy's Eq. Jur., §§ 1403, 1405.

BRICKELL, C. J.—The bill is without a special prayer for the enforcement of the performance of the contract, the subject matter of controversy, but the prayer for an injunction to be continued during the term of the contract, restraining the defendants from threatened breaches of the contract, is the equivalent of a prayer for specific performance, converting the bill, if not in form and letter, in substance and spirit, into a bill of that character. 1 Beach, Inj. § 443; *Joy v. St. Louis*, 138 U. S. 1; *Johnson v. S. & B. R. Co.*; 3 DeG. Mc. & G. 914–22. An injunction in aid of specific performance is merely ancillary. The primary inquiry is, necessarily, whether the contract on which the bill is founded is of the nature and character of which the court is accustomed to decree specific performance. If it is not of this nature and character, or, if for the injury of which complaint is made the law provides an adequate remedy, the bill fails, and the incidental or consequent remedy by injunction must fail.—1 Beach, Inj., § 7; 2 High, Inj., § 1109, *et seq*.

The parties to the contract are corporations, organiz-

13

ed under the laws of the State, having their domicil and place of business in the city of Mobile. As is to be collected from the contract, and from the allegations of the bill, the complainant was engaged in the generation of electric power, and the defendant in the operation of a street railway extending from the city to Spring Hill, a distance of more than six miles. The contract was entered into on the 13th day of May, 1893, to take effect on the succeeding first of July, and continue for a term of two years. The complainant had the option or privilege on giving notice, of continuing or extending it for a further and additional term of three years, which had been exercised before the filing of the bill. The contract contains mutual stipulations or promises. The complainant agrees to furnish steam power delivered to the pulley of an electric dynamo, of the power of one hundred kilowatts, and to furnish the power "constant," for eighteen hours per day from six o'clock A. M. to twelve o'clock P. M. The defendant agrees to furnish generators and other electrical apparatus, to be placed in the station or power house of the complainant, and to keep them in good repair; connected by belt, ready for the pulley of the engine to be attached to the pulley of the generator. The complainant agrees to furnish all oil, and waste, and attendance for the running of the generator and other apparatus, taking reasonable care of them, without responsibility for ordinary wear and tear, or for accidents. The defendant promises to pay for the services rendered by the complainant twenty-eight dollars per day for four or less motor cars, each car of forty horse power; and every car privileged to tow a passenger trailer; and five dollars per day for an additional motor car with trailer. The contract contains other stipulations, not material in the view we take of the case.

We have a contract which at the time of the filing of the bill had an unexpired term of five years, imposing on the complainant the rendition of continuous mechanical services, demanding the highest degree of skill, and necessitating the expenditure of considerable sums of money; on the defendant imposing the duty of maintaining costly machinery, keeping it in repair, and the daily use of cars moved by electricity on the line of its railway. This duty is to be performed though the ne-

[Electric Lighting Co. of Mobile v. Mobile & Spring Hill Railway Co.]

cessities of its business may not justify it, or may re-. quire that some other motive power should be employed.

The general doctrine is that a court of equity will decree specific performance only when it can dispose of the matter in controversy by a decree capable of present performance. It will not decree a party to perform a continuous duty extending over a series of years, but will leave the aggrieved party to his remedies at law.— Pomeroy on Contracts, § § 22, 114, 312; Waterman Spec. Perf. § 49; 1 Beach, Inj. § 443; *Iron Age Publishing Co. v. Western Union Tel. Co.*, 83 Ala. 458; *S. & N. Ala. R. Co. v. Highland Avenue & Belt, R. Co.* 98 Ala. 400; *Marble Co. v. Ripley*, 10 Wall. 339; *Richmond v. Dubuque & Sioux City R. Co.* 33 Iowa, 422; *Port Clinton R. R. Co. v. Cleveland & Toledo R. R. Co.*, 3 Ohio St. 544; *Johnson v. Shrewsbury & N. R. R. Co.* 3 DeG. Mc. & G. 914; *Blackett. v. Bates*, L. R. 1 Ch. App. 116. Suppose relief was granted the complainant, and the threatened breaches of the contract restrained, can the court retain the case, as the bill proposes, until by its own limitation the contract expires, superintending the conduct of the complainant and of the defendant, in the performance of the duties the contract imposes? There is no precedent or authority for such a decree. Mutuality in the equitable remedy is of the essence of the right to specific performance of a contract. As is said by Mr. Pomeroy, "the remedy must be attainable by both parties." Pomeroy, Contracts, § 164. The defendant could not have a decree against the complainant for a specific performance of the contract. The complainant could not be compelled to keep and maintain its machinery and skilled employes to operate it; to pursue its business, at a pecuniary lose, it may be. There can be no assurance that the complainant will remain of sufficient pecuniary ability to continue its business, to keep and perform its part of the contract. These, and like considerations, have induced the courts, in cases like the present, to abstain from all interference by injunction, or a decree for specific performance.

What is a further satisfactory reason for withholding equitable interference is that the complainant has an adequate remedy at law for all breaches of the contract; and by the terms of the contract, because of the defaults

[Alabama National Bank v. Halsey.]

of the defendant in making payments of the compensation, has the unqualified right to terminate it.

We find no error in the decree of the chancellor, and it must be affirmed.