233 So.2d 74

**GEORGE MOULTON, INC., a Corp.**

v.

**Joseph N. LANGAN, etc., et al.**

1 Div. 449.

Supreme Court of Alabama.

March 5, 1970.

Simon & Wood, Garet Van Antwerp, III, Robert E. Hodnette, Jr., Mobile, Charles T. Mathews, Ashland, for appellant.

428

COLEMAN, Justice.

Fred G. Collins, James H. Lackey, Collins, Galloway & Murphy, Mobile, for appellees.

Complainant appeals from a decree whereby the court sustained a demurrer to and dismissed a bill of complaint in which complainant seeks a declaratory decree and temporary injunction. Complainant appeals also from a decree denying the

temporary injunction after notice and hearing.

Complainant assigns for error the action of the court in sustaining the demurrer to the bill of complaint as amended. Complainant also assigns for error the action of the court denying a temporary injunction.

### Sustaining demurrer.

In the bill, complainant avers that it is an Alabama corporation; that the respondents are the City of Mobile, a municipal corporation, and also the three elected commissioners of the city; that complainant is engaged in the business of engineering; that the president of the complainant corporation has for many years studied the design and operation of compost plants which process and separate garbage; that in September, 1964, complainant and the city entered into a written contract with respect to the design, construction, and operation of a compost plant to improve the city's system of garbage disposal; and that a copy of the contract is made exhibit to the bill of complaint.

A summary of pertinent provisions of the contract are:

The city employs complainant to perform all professional, technical, and marketing services as set out in the contract in connection with studies, design, and construction of a modern and efficient compost plant for treatment of city's garbage and refuse and the disposition and marketing of salable materials produced thereby. Complainant accepts such employment and agrees to perform the specified services and warrants that it presently has and will maintain on its staff duly licensed personnel qualified "to perform all the services contemplated by this contract."

In Part III of the contract, the services to be performed by complainant are described. Briefly, these services are:

(A). to make all necessary preliminary studies, compare the proposed composting method with alternative methods, make forecasts as to future requirements of the city;

(B). to make preliminary design plans and cost estimates for the proposed plant;

(C). to furnish complete, detailed plans for construction of the proposed plant;

(D). to supervise and control plant construction and require it to conform to plans, and assist in preliminary "shakedown" operation of the completed plant;

(E). after the plant is in "normal" operation, complainant is to furnish expert technical consultation and assistance with respect to operation and maintenance;

(F). to arrange for, procure, and handle the marketing or disposition of salable materials produced by the plant in accord with Part IX of the contract, hereinafter referred to.

In Part V of the contract, the city agrees to pay complainant as follows:

(A). For making preliminary studies described in paragraph III(A) of the contract mentioned above: $10,000.00;

(B). For making preliminary design plans and estimates, for furnishing complete detailed construction plans, and for supervision and control of plant construction as described in paragraphs III(B), III(C), and III(D) mentioned above, six per cent of the cost of construction;

(C). For furnishing technical assistance as to operation and maintenance as described in paragraph III(E) mentioned above: $6,000.00 annually for a period of five years after the plant is in full operation;

(D). – (H). Certain adjustments and recomputations of the compensation due complainant are provided for.

. In Part VIII of the contract, it is provided that if, at any time prior to final ac-

ceptance of the plant by the city, complainant shall fail to perform any of its obligations under the contract in a reasonably proper manner, the city " . . . . shall have the right to terminate this contract at any time during said period for such reason by giving to . . . . " complainant notice in writing of such termination and stating in detail the causes therefor.

In Part IX of the contract, it is provided that complainant shall perform all studies necessary or convenient to developing and maintaining a market for the sale of all salable materials produced by operation of the plant; that as compensation for all organic compost produced, complainant shall pay to the city $4.00 per short ton plus 20% of the net profits from all compost "marketed"; that at the end of two years "after the date hereof," renegotiation and adjustment of the base price and percentage of net profits shall be made, and similar renegotiation shall be made thereafter at four-year intervals during the life of the contract; that the provisions of Part IX shall remain in effect for twenty years "from date hereof" and complainant is granted the right to renew for an additional twenty years at complainant's option provided complainant is not in default of any obligation imposed on it by the contract.

In Part X, it is provided that the contract gives to complainant " . . . . the exclusive benefit of all engineer and other work to be done for the City hereunder, and to that end the City agrees that it shall not and will not let other contracts nor employ other persons or firms for the performance of any of the work covered by this contract during the period this contract is in effect."

Complainant avers that in November, 1965, the city and complainant executed a contract whereby the city agreed to cause to be constructed a railroad spur line as a part of the plant and complainant agreed to reimburse the city for cost of the spur line by paying three installments one, two, and three years, respectively, after the plant goes into full operation. The November, 1965, contract contains the preliminary recital

"WHEREAS, under said contract (of September 9, 1964) all salvageable materials from said plant, together with all compost for which said payment is made, belong to Engineer (complainant), and it is necessary to the proper handling and shipment of these materials that a railroad spur line be constructed into the plant; . . . . " (Par. Added)

Complainant avers that it prepared the preliminary studies and surveys required of it under paragraph A of Part III of the contract and the city paid complainant for this work, determined to proceed with the undertaking, and instructed complainant to submit plans and estimates of costs.

Complainant avers that it prepared detailed plans and drawings which were approved by the city; that contracts were entered into by the city with certain parties for construction of the plant; that construction commenced and complainant performed the supervision of the construction required of complainant under the contract; that in December, 1965, the plant was operated on a trial-run basis; that the city's projects engineer recommended that payment be made to one contractor and withheld from others until they had made advertisement of completion; that at this time the equipment performed or was capable of performing substantially as it was intended to perform; that for the next two and one-half months efforts were made to train personnel of the city to operate the plant; that, during this period, complainant made suggestions and recommendations, but, contrary to complainant's suggestions, the plant was operated in a different manner causing jams and breakdowns; that complainant refused to approve payment to one contractor due to defects in machinery furnished by such contractor; that in March, 1966, the plant was ordered into full operation and operated for

three months; that during this period the city's employees continued to operate the plant contrary to complainant's instructions.

Complainant avers that it has performed that portion of the contract requiring it to perform engineering services in and about the construction of the plant and has been paid for said services by the city.

Complainant avers that under paragraph E of Part III of the contract, complainant was employed to furnish expert technical consultation and assistance with respect to operation and maintenance of the plant for five years for $6,000.00 per year, and complainant is ready, willing, and able to perform such service but the plant is not in normal operation for the reasons hereinabove alleged and for the additional reason that the city has refused to operate said plant or follow the recommendations complainant has given to the city.

In the amendment to the bill, complainant avers, with respect to the marketing provisions of Part IX of the contract, that complainant, with knowledge and consent of respondents, has conducted experiments and made arrangements with third parties for testing the compost products of the plant and entered into contracts for sale of salvageable materials and other products of the plant in reliance on complainant's contract with the city; but, as the result of wrongful action of the city hereinafter averred, complainant has been unable to carry out its contracts with third parties for sale of materials and products of the plant and is in danger of legal action by third parties and loss of valuable property rights; that complainant is ready, willing, and able to perform its obligations with respect to marketing said materials and products, but as the result of the wrongful action of respondents, complainant cannot do so and will suffer irreparable injury.

Complainant further avers that respondents, well knowing that complainant had for more than one year been engaged in arrangements and contracts to carry out its marketing obligations, which ". . . . .

involved a great deal of time and expert knowledge and the outlay by Complainant of great sums of money . . . . ." did, on September 8, 1966, file an action at law against complainant for $250,000.00 damages for an alleged breach of warranty in the design and supervision of the compost plant under the contract; that respondents have sent to complainant a letter from the respondent commissioners wrongfully and falsely asserting that complainant had breached the contract and wrongfully undertaking to cancel the contract; that respondents have barred complainant from ingress and egress to and from the plant and wrongfully denied complainant the means to carry on its marketing activities.

Complainant denies the alleged breach of contract by complainant and denies the right of respondents to cancel the contract, and asserts that complainant cannot assert its claim in the pending action or by separate action at law because the damages suffered are difficult of measurement.

The original bill was filed October 3, 1966. The amendment was filed January 6, 1967.

In the amendment, complainant further avers that since the filing of the bill and on November 1, 1966, respondents commenced operation of the plant without altering substantially the plant as designed by complainant; on information and belief, that since September 7, 1966, respondents have disposed of salable materials produced by operation of the plant and have made arrangements for marketing salable materials so produced, all in violation of the contract; that wrongful dissipation of the chattels will or can result in multitudinous litigation by complainant to protect its rights and work irreparable injury to complainant; and that for these reasons the status quo of the personal property covered by Part IX of the contract should be preserved pending a final determination of the cause.

Complainant avers that a bona fide justiciable controversy exists between complainant and respondents.

In the amended bill, complainant prays for relief as follows:

A. That the court will make an order temporarily enjoining respondents from proceeding further with the pending action at law until the rights of the parties herein shall be finally determined.

B. That on final hearing, the court will construe the contract to effect that respondents have breached the contract with respect to the construction of the plant and its operation and that complainant has fully performed its obligations under the contract; that those portions of the contract relating to complainant's supervisory duties and compensation and the marketing of the products under Part IX of the contract have not been breached by complainant; that complainant is entitled to perform the duties and obtain the benefits therein provided; and that complainant is entitled to the salvageable and salable materials and compost produced by operation of the plant and must pay the city therefor as specified in the contract.

C. That the court will order on final hearing that respondents make a full accounting with respect to all sales, since September 7, 1966, of compost and other salable materials produced by the plant and as to all money or other considerations derived from such sales or other disposition of such materials.

D. Complainant prays for such other appropriate relief to which complainant may be entitled.

Respondents, in their brief, commence their argument with the following question:

"*Question*—Disregarding the pendency of the prior action at law, do the allegations of the bill of complaint, as amended, present a justiciable controversy between the parties complainant and respondent upon the basis of which the court can properly proceed to construe the contracts between the parties and determine and declare their respective rights thereunder?"

Respondents say that the question must be answered in the affirmative. Respondents may be correct, but the averments of the bill affirmatively and clearly show that there is a prior action at law pending between the same parties who are parties to the instant suit, and this averment cannot be disregarded.

" . . . We have never held that after another suit has been begun, if it affords an adequate judicial determination of the question, a suit for a declaratory judgment may supersede it, and withdraw from that suit a decision of the question." Auto Mut. Indemnity Co. v. Moore, 235 Ala. 426, 429, 179 So. 368, 370.

This court quoted the foregoing statement of the rule and followed it in Foreman v. Smith, 272 Ala. 624, 629, 133 So.2d 497.

■ Courts will ordinarily refuse to entertain action for declaratory judgment as to questions which are determinable in pending action or proceeding between the same parties. Uniform Laws Annotated (1965), Vol. 9A, page 79, Note 123.

Grounds 13 and 14 of the demurrer to the amended bill of complaint appear on page 63 of the record and raise the objection that, in the instant case, there is a pending action at law between the same parties " . . . in which may be adjudicated the same identical issues that are involved in this proceeding," and " . . . in which the Complainant may file pleas of set off and recoupment to recover the damages sought in this cause."

The first prayer of the amended bill presents the following issue:

A. Whether complainant is entitled to temporarily enjoin the pending action at law until the rights of the parties have been determined in the declaratory suit.

We do not consider this issue at this point but consider first whether complainant is entitled to maintain the declaratory suit. If complainant is entitled to

maintain the declaratory suit, then complainant may be entitled to enjoin temporarily the law action, but if complainant is not entitled to maintain the declaratory suit, then complainant would have no right to enjoin the law action pending determination of the declaratory suit because there would be no declaratory suit. Moreover:

" . . . . The mere right of the appellant to a declaratory judgment is not sufficient within itself to justify the issuance of the temporary injunction. Pruett v. Las Vegas, Inc., 261 Ala. 557, 74 So.2d 807." Alabama Law Enforce. Officers, Inc. v. City of Anniston, 272 Ala. 319, 323, 131 So.2d 897, 901.

Next presented are the issues as to which a declaratory decree is sought. The first such issues are:

B. Whether respondents have breached the contract with respect to the construction of the plant and its operation; whether complainant has fully performed its obligations under the contract; whether those portions of the contract with respect to supervisory duties and compensation of complainant therefor have been breached by complainant; whether those provisions of the contract with respect to the marketing of products have been breached by complainant.

■ These issues are simply whether a party has failed to perform a contract. No citation of authority appears necessary to support the proposition that an action at law is an adequate remedy to decide whether complainant has breached a contract for performance of services as in the instant case. The action at law appears adequate to have determined whether respondents have or complainant has breached the contract or caused it to be breached.

In Foreman v. Smith, supra, which presented issues as to whether parties had breached contracts, this court said:

"In the suit at law pending in the Circuit Court . . . . the cross-complainants here can defend on the ground that Foreman was rightly discharged and may file pleas of set-off and recoupment if they so desire. §§ 350, 352, Title 7, Code 1940; Burnett & Bean v. Miller, 205 Ala. 606, 88 So. 871." (272 Ala. at 639, 133 So.2d at 501.)

In the instant case, complainant may defend on the ground that it has not breached its warranty and may file pleas of set-off and recoupment against respondents for their alleged breaches of the contract.

The second sentence in paragraph B of the amended prayer of the instant bill seeks a declaration that complainant is entitled to the salvageable and salable material produced or made available by operation of the plant. In the action at law, complainant may claim and recover damages if respondents have wrongfully breached their agreement to permit complainant to market the material. This appears to be merely another issue whether a party has breached the contract. Whether complainant is entitled to specific performance of the contract we consider hereafter in this opinion.

In paragraph C of the prayer, complainant asks for an accounting with respect to the sale and disposal, since September 7, 1966, of material produced by the plant. It is not clear that complainant asks for accounting in order to give equity to the bill or to sustain its right to maintain the declaratory suit. In its first brief, complainant says:

" . . . . The accounting is sought as a matter of discovery and in support of other relief which is prayed." In its reply brief, complainant says:

" . . . . obviously this relief is based upon the need for discovery. It is ancillary to other relief sought, and, as such, will always be entertained in equity."

This court has said:

" 'Equity will not take jurisdiction for an accounting on a legal claim, unless the accounts are mutual or so complicated

and difficult to adjust that relief at law is not adequate or fiduciary relations exist between the parties. Doss v. Williams, 249 Ala. 565, 32 So.2d 221; Electrolux Corporation v. Iverson, 250 Ala. 24, 32 So.2d 891.' Ex parte Adams Construction Co., 251 Ala. 347, 349(2), 37 So.2d 497, 498." Wooten v. Wooten, 270 Ala. 191, 193, 117 So.2d 192, 194.

The averments of the instant bill show no right to an accounting in equity. Neither do the averments show that a declaratory decree is necessary because complainant cannot obtain an adequate accounting in the action at law.

As to complainant's claim that accounting in the instant suit is "based upon the need for discovery," what the court said in *Wooten* seems appropriate here:

" . . . . It clearly appears that special relief by way of discovery would be obtainable by the statutory system at law devised for that purpose. Ex parte Adams Construction Co., supra; Pate v. Bruner, 243 Ala. 648, 11 So.2d 356. . . . . ." (270 Ala. at 193, 117 So.2d at 195.)

We are not persuaded that the prayer for accounting presents an issue which cannot be adequately determined in the action at law.

■ We are of opinion that all issues presented by the bill for declaratory relief can be determined in the pending law action and, therefore, that complainant has shown no right to supersede the law action by the instant proceeding for declaratory relief. Under the rule followed in Auto Mut. Indemnity Co. v. Moore, supra, and Foreman v. Smith, supra, the instant bill is insufficient against the grounds of demurrer which point out that all issues presented by the instant bill are determinable in the pending action at law, and the demurrer was correctly sustained on those grounds.

*Denying temporary injunction.*

■ We have already indicated that it seems to us that the general rule should be that a party is not ordinarily entitled to enjoin temporarily a pending action until determination of a declaratory proceeding when such party is not entitled to maintain the declaratory proceeding. The trial court, however, in the decree denying the application for temporary injunction, found that the amended bill of complaint "is devoid of equity." Complainant insists that such finding is erroneous and says:

"Far from being 'devoid of equity' the bill, as amended, is replete with equity. . . . . "

In deference to the earnest argument of complainant's counsel we will consider that which appears to be the grounds relied on by complainant as giving equity to the bill.

Complainant insists that the contract is severable, citing: Stewart v. Weaver, 12 Ala. 538; Wolfe v. Parham, 18 Ala. 441; Kirkland v. Oates, 25 Ala. 465; and Blythe v. Embry, 36 Ala.App. 596, 61 So.2d 142. As we understand the cited cases none of them holds that, because a contract is severable, a party to the contract is entitled to enjoin temporarily a pending action at law. It is readily apparent that none of the cited cases relate to declaratory proceedings.

Complainant says:

" . . . . This contract is in four major parts, or phases. . . . . "

At another place in argument, complainant says:

"The City's action at law concerns itself only with the second phase of the contract, the part covering design and supervision of the compost plant. A judgment in that case would resolve nothing with respect to the other phases of the contract. . . . . . "

Complainant appears to take the position that if the contract is severable, as complainant contends, then the only issues which can be determined in the law action are the issues relating to that part of the contract covering design and supervision of construction of the plant. In Foreman v. Smith, supra, this court said that " . . . . the cross-complainants here can defend (the law action in that case) on the ground that Foreman was rightly discharged and may file pleas of set-off and recoupment if they so desire. §§ 350, 352, Title 7, Code 1940; . . . . ." (Par. Supplied) (272 Ala. at 629 [6], 133 So.2d at 501)

Why cannot complainant defend the pending action at law in the instant case on the ground that respondents have breached their obligations under the contract and also file pleas of set-off and recoupment if complainant so desires? We think complainant can do so, whether the contract in the instant case be severable or entire, and that the character of the contract as to severability has no significance in determining whether the instant bill is devoid of equity.

The trial court found that the aspect of the bill seeking specific performance is without equity inasmuch as the contract is of a type which is not enforceable in equity. In reply brief, beginning at last paragraph on page 10, complainant says " . . . . in the first place, the Bill as amended does not seek specific performance of the contract on the part of the City . . . . This would entail the forcing of the City to operate the plant . . . . The Appellant agrees that if the City took the notion to cease operating the plant . . . . Appellant would have no ground upon which to force the City to continue to operate. But, the Appellant . . . . insists that, as long as . . . . the City does operate the plant, Appellant is entitled under the contract to receive all salvable materials extracted and all organic compost produced by the plant and to market the same, to receive the proceeds from the sale thereof, and to pay to the City what the Appellant is called upon by the contract to pay there-

for . . . . and Appellant is entitled to these things under the marketing phase of the contract, without interference . . . . by the City . . . . Securing to Appellant its right to . . . . enjoy its right under the marketing contract does not . . . . deny the Appellees their right to shut the plant down at will, nor would it entail the constant supervision by the courts which, in some cases, is held to necessitate the denial of the relief of specific performance."

In its first brief, page 36, complainant says that its right to market the products of the plant, if the city operates it, " . . . . can be enforced by way of proper prohibitive order, which is a far cry from relief in the form of compelling Appellees to operate the plant. . . . ."

What complainant seeks appears to be specific performance of respondents' agreement to permit complainant to market the products of the plant, and to accomplish that purpose in a negative way by prohibitive order. This is still specific performance. We quote what this court has said in several cases:

" . . . . 'Contracts which by their terms stipulate for a succession of acts, whose performance cannot be consummated by one transaction, but will be continuous, and require protracted supervision and direction, with the exercise of special knowledge, skill, or judgment in such oversight, . . . . are not, as a rule, specifically enforced.'—Pomeroy on Specific Performance of Contracts, § 312, and cases cited in note 5; Waterman on Specific Performance of Contracts, § 49; Electric Lighting Co. v. Mobile, *supra* (109 Ala. 190, 195, 19 So. 721). So, too, must the contract be such a one as can be enforced in its entirety. A partial enforcement by piecemeal will not suffice. . . . ." Tombigbee Valley R. R. Co. v. Fairford Lumber Co., 155 Ala. 575, 589, 590, 47 So. 88.

"The bill is without a special prayer for the enforcement of the performance

of the contract, the subject-matter of controversy, but the prayer for an injunction to be continued during the term of the contract, restraining the defendants from threatened breaches of the contract, is the equivalent of a prayer for specific performance, converting the bill, if not in form and letter, in substance and spirit, into a bill of that character. (Citations Omitted) An injunction in aid of specific performance is merely ancillary. The primary inquiry is, necessarily, whether the contract on which the bill is founded is of the nature and character of which the court is accustomed to decree specific performance. If it is not of this nature and character, or if for the injury of which complaint is made the law provides an adequate remedy, the bill fails, and the incidental or consequent remedy by injunction must fail. (Citations Omitted)

" . . . .

"The general doctrine is that a court of equity will decree specific performance only when it can dispose of the matter in controversy by a decree capable of present performance. It will not decree a party to perform a continuous duty extending over a series of years, but will leave the aggrieved party to his remedies at law. . . . ." Electric Lighting Co. of Mobile v. Mobile & Spring Hill Railway Co., 109 Ala. 190, 193, 195, 19 So. 721, 722, 723.

"3. We have not, in the above opinion, undertaken to give the reasons underlying the above rule. The reasons for the rule are fully and plainly set forth in the above-cited cases of Roquemore & Hall v. Mitchell Bros. (167 Ala. 475, 52 So. 423), Tombigbee Valley Ry. Co. v. Fairford Lumber Co. (155 Ala. 575, 47 So. 88), and Electric Light Co. v. Mobile & S. H. Ry. Co. (109 Ala. 190, 19 So. 721). For the reasons set out in the opinions in these cases, and especially those set out in Electric Light Co. v. Mobile & S. H. Ry. Co., *supra,* courts of equity, in cases like the present, refuse to assume jurisdiction to specifically enforce contracts, but remit the parties aggrieved to their action for damages in courts of law. The enforcement of the rule in the instant case may result in a hardship to appellee; but the rule is as we have stated it to be, and appellee has his action at law for such damages as he may legally have suffered by reason of the breach of the contract. Dimmick v. Stokes, 151 Ala. 150, 43 So. 854." Stewart v. White, 189 Ala. 192, 195, 66 So. 623, 624.

We are of opinion that the averments of the bill do not show that complainant is entitled to specific performance and that the bill is without equity as a bill seeking such relief. We do not think that the instant case comes within the exception to the general rule which was applied to the contract in Buck Creek Cotton Mills v. Stokely, 236 Ala. 146, 181 So. 100, or of any of the other authorities cited by complainant in support of the argument that the instant contract creates an agency coupled with an interest.

We have already said that the bill shows no right to an accounting in equity. The bill contains no equity as a bill for an accounting or discovery.

■■ A bill without equity will not support an injunction of any character under any circumstances. Loop National Bank v. Cox, 255 Ala. 388, 392, 51 So.2d 534. The bill is without equity and the court did not err in denying temporary injunction.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, MERRILL, HARWOOD, BLOODWORTH, MADDOX and McCALL, JJ., concur.