239 So.2d 545

Ex parte JIM DANDY COMPANY, a corporation.

In re I. H. SUGERMAN

v.

The JIM DANDY COMPANY.

6 Div. 771.

Supreme Court of Alabama.

Sept. 17, 1970.

---

Hobart A. McWhorter, Jr., Warren B. Lightfoot, Birmingham, for petitioner.

Lucien D. Gardner, Jr., Leigh M. Clark, Francis Hare, Birmingham, for respondent.

COLEMAN, Justice.

In this case, this court reviews an order of the circuit court, in equity, denying the respondent's motion to transfer from equity to law a proceeding which the complainant commenced by filing in the equity court a bill for declaratory decree and supplemental coercive relief.

The bill was filed by I. H. Sugerman, a natural person, who will be referred to as the complainant. The bill is filed against a corporation formerly named Western Grain Company and now named The Jim Dandy Company. The corporation will be referred to as the respondent.

The respondent filed its motion to transfer the suit to the law side, and the trial court denied the motion. Respondent applied to this court for rule nisi to be directed to the trial judge requiring him as

such judge, to vacate his order denying the motion and to grant the transfer to law, or, in the alternative, to appear and show cause why he should not vacate the order denying transfer and transfer the suit to the law side. This court issued the rule nisi. The trial judge filed demurrer and answer in this court and asserts various reasons why the cause should not be transferred to law.

Counsel for the trial judge say in brief:

" . . . . Consequently we will concede, for the purpose of this petition, that a respondent in equity is entitled to move to transfer to the law side of the court and to have the motion granted if the action is not one of equitable cognizance because the remedy at law is adequate. . . . . "

In Ex parte Louisville & N. R. Co., 211 Ala. 531, 100 So. 843, this court held that mandamus would lie to review an order denying transfer of a cause from law to equity. The reason for the holding is stated as follows:

"It would work injury to the defendant to require it to go through this trial and wait until after final judgment in the ejectment suit before presenting for review this ruling on its motion. The remedy by appeal after final judgment may be adequate to correct the error, but it is attended with injury to the defendant. . . . . " (211 Ala. at 532, 100 So. at 844)

See Jones v. Wright, 220 Ala. 406, 125 So. 645, where the court said:

"[4] For want of a remedy by appeal, mandamus in lieu of appeal is recognized as the appropriate remedy to review orders granting or denying the transfer or re-transfer of causes; and matter raised by demurrer going to the equity of the bill are reviewed as on appeal. (Citations Omitted)" (220 Ala. at 407, 125 So. at 646)

For the reason above expressed, review by appeal from the final decree in the instant case would not be an adequate remedy for respondent and review by mandamus appears to be appropriate here.

*On the merits.*

In his bill, complainant avers that on August 1, 1966, he and respondent entered into a contract, for a term of approximately thirteen years, whereby complainant was employed by respondent " . . . . in an executive capacity, to have such duties and responsibilities and to do and perform such offices and functions in an executive capacity as Western (respondent) may determine." (Par. Added)

The contract provides that complainant agrees to work full time for respondent and not to work for anyone else without respondent's consent during the term.

Complainant's compensation is to be $70,000.00 per year plus deferred compensation to be credited, as stated in brief, at the rate of $22,000.00 per year.

Complainant avers that at the time the contract was entered into, and thereafter until July 14, 1969, complainant was president and chief executive officer of the respondent corporation, and that it was understood and agreed by the contracting parties that, during the term of the contract, complainant was to be the chief executive officer of the corporation.

Complainant avers that on July 14, 1969, the board of directors of respondent terminated his relation as chief executive officer and divested him of his position and duties as chief executive officer; that on September 2, 1969, and thereafter he has been assigned duties that are not in an executive capacity; that at the contract date and thereafter, respondent had its principal office, a factory, and an office building in Birmingham, Alabama, which was the only place for complainant to perform his duties under the contract; that to induce complainant to make his permanent residence in Birmingham, respondent agreed to lend complainant $131,000.00, without interest,

to assist him in acquiring a permanent residence there; that it was understood and agreed that his principal location for performance of his duties was to be Birmingham; that on August 20, 1969, respondent ordered him to report to offices at Savannah, Georgia, for regular performance of his duties under the contract and he reported to Savannah; that respondent removed him from the office of president and designated him as a vice-president; that he has been demoted from the highest echelon of duties to one of the lowest echelon of duties in the "official family" of respondent if he has any authority or is a member of said official family.

Other grievances are alleged in the bill. We understand that complainant is continuing to perform the duties assigned to him and that respondent continues to pay him the agreed compensation.

Complainant alleges that respondent has breached the contract; that a justiciable controversy exists; and that he is ready, willing, and able to perform the contract on his part according to its terms, and that it would constitute a breach of the contract for respondent to pay the total compensation thereunder in one sum at the present time and denies the right of respondent to do so.

Complainant prays for relief as follows: ". . . . that upon final hearing the Court will ORDER, ADJUDGE, DECREE and DECLARE as follows:

"(1) That respondent has breached said contract and complainant is entitled to all of the rights afforded him under said contract.

"(2) That respondent be required to pay complainant the compensation and benefits under said contract over the period of years designated in the contract at the times provided for in the contract.

"(3) That respondent be restrained and enjoined from directing or requiring complainant to perform services under said contract, in such a way as to constitute a breach of said contract as particularized alternatively in lettered subparagraphs of paragraph 3 hereof."

Complainant prays also for general relief.

In the petition for mandamus filed in this court by the respondent, it is alleged: ". . . . paragraphs numbered '(2)' and '(3)' of the prayer for relief . . . . represent in truth and in fact a request for specific performance of a contract for personal service contrary to the provisions of Tit. 9, § 55, Ala.Code 1940 (Recompiled 1958)." [1]

In his answer to the rule nisi, the trial judge takes issue with and "denies specifically" the allegation in the petition for mandamus that prayers (2) and (3) of the bill of complaint represent a request for specific performance of a contract for personal service. The trial judge states in his answer that:

". . . . neither prayer (2) nor prayer (3) of the prayer for relief represents a request for specific performance of a contract for personal service contrary to the provisions of Tit. 9, § 55 . . . ."

An issue of law is thus presented whether prayers (2) and (3) of the bill are prayers for specific performance of a contract for personal service.

By its terms, the contract provides that the complainant ". . . . is now employed by Western (the respondent) in an executive capacity . . . . to do and perform such offices and functions in an

---

1. As here pertinent, § 55 recites:
"§ 55. .... The following obligations cannot be specifically enforced:
"An obligation to render personal service.
. . . . . . . . . .
"An obligation to employ another in personal service.
". . . . . . . . . ."

executive capacity as Western may determine," (Par. Added) and that complainant ". . . . shall devote his full time and attention, knowledge and skill to such employment . . . ." Surely this is a contract for personal service. Counsel for the trial judge do not appear to suggest that complainant's obligation under the contract is not "An obligation to render personal service" or that respondent's obligation is not "An obligation to employ another in personal service." Counsel do appear to contend that in prayers (2) and (3) complainant is not asking for specific performance of the contract. In brief, counsel say that:

"The second prayer asks that Petitioner (the respondent) be required to pay Sugerman the compensation and benefits under the contract over the years at the times provided for in it. . . . ." (Par. Added)

It seems to us that prayer (2) is a prayer for direct and express enforcement of respondent's obligation with respect to payment of compensation to its employee for his personal service under the contract.

Counsel say further:

"The third prayer does not, as claimed, seek specific performance of the contract of employment. It does not seek to enjoin Petitioner from terminating the contract. It merely prays that Petitioner be enjoined from requiring Sugerman to perform services in such a way as to constitute a breach of the contract, and is to be construed as relating to such time as the contract is in effect. . . . ."

The contract contemplates that respondent shall direct or require complainant to perform duties and responsibilities in an executive capacity as respondent may determine. Prayer (3) seeks to enjoin respondent from directing or requiring complainant to perform duties contrary to the terms of the contract.

What complainant seeks appears to be specific performance of respondent's agreement to assign complainant duties of an executive nature and to compel respondent to perform its agreement by enjoining respondent from not performing the agreement.[2]

In a suit for injunction brought by a complainant who had been employed under a contract "' . . . . to be superintendent and take charge of the production of the factory. . . . .'" of respondent, the trial court denied a temporary injunction and this court affirmed. This court said:

". . . . An injunction was prayed to restrain defendant from discharging complainant or interfering with his performance of his duties under the contract. The chancellor, judge of the circuit sitting in equity, sustained defendant's general demurrer, and denied complainant's prayer for a temporary injunction. The bill, in substance, is one to enforce specific performance of the contract alleged.

". . . . The fundamental trouble with appellant's case is that his contract is for the performance of continuous personal services on his part. Whether as superintendent, employee, or servant, his services are merely personal, no matter how dignified or responsible they may be, and the court of equity cannot undertake to enforce the performance of such services. The result is that the case presented discloses a lack of mu-

---

2. With respect to a bill seeking injunction for a somewhat similar purpose, this court said:
   "What complainant seeks appears to be specific performance of respondents' agreement to permit complainant to market the products of the plant, and to accomplish that purpose in a negative way by prohibitive order. This is still specific performance. . . . ." Moulton v. Langan, 285 Ala. 427, 233 So.2d 74, 81, ¶ [4].

tuality of equitable remedy. If appellant were reinstated in his place, he might abandon his duties on the next day, and appellee would be remediless. The court of equity will not undertake to enforce such contracts at the instance of either party. (Citations Omitted)" Hewitt v. Magic City Furniture & Mfg. Co., 214 Ala. 265, 266, 107 So. 745.

On appeal from decree granting a motion to dissolve an injunction enjoining breach of a contract to supply electricity for two years, this court affirmed and, among other things, said:

"The bill is without a special prayer for the enforcement of the performance of the contract; the subject-matter of controversy, but the prayer for an injunction to be continued during the term of the contract, restraining the defendants from threatened breaches of the contract, is the equivalent of a prayer for specific performance, converting the bill, if not in form and letter, in substance and spirit, into a bill of that character. 1 Beach, Inj. § 443; Joy v. [City of] St. Louis, 138 U.S. 1, 11 S.Ct. 243, 34 L.Ed. 843; Johnson v. S & B R. Co.; 3 DeG., Mc. & G. 914–922. An injunction in aid of specific performance is merely ancillary. The primary inquiry is, necessarily, whether the contract on which the bill is founded is of the nature and character of which the court is accustomed to decree specific performance. If it is not of this nature and character, or if for the injury of which complainant is made the law provides an adequate remedy, the bill fails, and the incidental or consequent remedy by injunction must fail.—1 Beach, Inj., § 7; 2 High, Inj., § 1109, et seq.

". . . . . . . . .

"The general doctrine is that a court of equity will decree specific performance only when it can dispose of the matter in controversy by a decree capable of present performance. It will not decree a party to perform a continuous duty extending over a series of years, but will leave the aggrieved party to his remedies at law. (Citations Omitted) . . . ." Electric Lighting Co. of Mobile v. Mobile & Spring Hill Railway Co., 109 Ala. 190, 193, 195, 19 So. 721.

In reversing a decree which granted a temporary injunction in suit for specific performance of contract to accept all invoices for the output of a stave mill for a period of fifty-seven months; i. e., until a mortgage was paid; this court said:

". . . . For the reasons set out in the opinions in these cases, and especially those set out in Electric Light Co. v. Mobile & S. H. Ry. Co., supra, courts of equity, in cases like the present, refuse to assume jurisdiction to specifically enforce contracts, but remit the parties aggrieved to their actions for damages in courts of law. The enforcement of the rule in the instant case may result in a hardship to appellee; but the rule is as we have stated it to be, and appellee has his action at law for such damages as he may legally have suffered by reason of the breach of the contract. —Dimmick v. Stokes, 151 Ala. 150, 43 So. 854." Stewart v. White, 189 Ala. 192, 195, 66 So. 623.

■ We are of opinion that, under the authorities cited, the supplemental coercive relief prayed for under prayers (2) and (3) is specific performance which equity cannot grant and is not available at law. Title 9, § 55, Code 1940.

The preceding discussion raises the question whether a bill for declaratory relief may be maintained in equity where complainant prays for supplemental coercive relief which neither an equity court nor a law court has power to grant, such as specific enforcement of a contract for personal services which is the supplemental coercive relief prayed for in the bill here under consideration.

To answer this question, it is necessary to distinguish between purely declaratory

relief; that is, a statement of the rights of the parties under the contract; and supplemental coercive relief.[3]

Respondent says:

"A declaratory judgment action is here appropriate, but only at law. " . . . .

This contention appears to mean that complainant may maintain a proceeding for declaratory relief but not in equity on the facts averred in the instant bill of complaint. Respondent quotes in argument in brief the statement of this court that the Declaratory Judgment Act (Title 7, § 156 et seq.), particularly § 156 and § 163,

" . . . . contemplates the prosecution of suits in equity *for coercive relief* on equitable causes of action, and actions in the common law courts on legal causes of actions *seeking coercive judgments*. (Citation Omitted)." (Emphasis Supplied)  Berman v. Wreck-A-Pair Bldg. Co., 236 Ala. 301, 304, 182 So. 54 ¶ [4].

The quoted statement was made in *Berman* in Case No. 6 Div. 287, which was an appeal from a decree overruling the demurrer of one respondent to a bill against two respondents. This court held the averments of the bill " . . . . sufficient to give the complainant an equitable cause of action, for discovery, accounting and relief, without regard to the Declaratory Judgment Act. (Citation Omitted)" (236 Ala. at 305, 182 So. at 57)

This court held further, however, that the bill did not describe with certainty to a common intent what property had been taken by appellant and was too uncertain to invite joinder of issue. Consequently,

the decree overruling the demurrer was reversed as to the appellant.

In the instant case, in reply to respondent's argument based on the quotation from *Berman*, supra, counsel for the trial judge say in brief that respondent " . . . . claims (Proposition of Law No. 3) that the Declaratory Judgment Act 'contemplates the prosecution of suits in Equity for equitable causes of action and the prosecution of suits in Law for legal causes of action,' and (Proposition of Law No. 4) in order to maintain a declaratory judgment in equity, 'there must be independent grounds for equitable jurisdiction.' It quotes from Berman v. Wreck-A-Pair Building Company . . . . in support of Proposition No. 3, and it could have cited other cases to the same effect, all decided prior to the 1947 amendment of Section 167 of Title 7. As observed . . . . in Howle v. Alabama State Milk Control Board, 265 Ala. 189, 90 So.2d 752 (1956):

" 'Prior to 1947, our cases were in conflict as to whether or not the existence of another remedy precluded an action for a declaratory judgment.
" . . . . .

" 'Since the enactment of the 1947 amendment, this court has held that jurisdiction to grant relief under the Declaratory Judgments Act does not depend on the absence of another adequate remedy.' "

Comparison of respondent's Proposition of Law No. 3 with the opinion in *Berman* discloses that, in Proposition of Law No. 3, respondent has omitted from the proposition the words "coercive relief on" and "seeking coercive judgments," which appear in the opinion.

---

3. § 163, Title 7, recites:
   "§ 163. Supplemental relief.—Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. *The application* therefor *shall be* by petition *to a court having jurisdiction to grant the relief*. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith." (Emphasis Supplied)

As stated above, the difference between purely declaratory relief and supplemental coercive relief must be borne in mind. In *Berman,* this court, referring to § 1 and § 8 of the Declaratory Judgment Act, now § 156 and § 163, Title 7, had this to say:

" 'It should be kept in mind that the equity of a bill under the Declaratory Judgment Act does not turn on whether a case is made for an injunction.

" 'This is a statutory jurisdiction, to be exercised in the cases and to the ends defined by statute, does not depend on the absence of other remedies. It is alternate in character. One of its chief fields is to define legal rights, obligations, and relations over which real and substantial controversies have arisen before there has been an invasion of rights giving rise to other forms of action.

\* \* \* \* \* . \*

" 'Further relief may be had in such proceeding if necessary to complete relief. Gen.Acts 1935, p. 777, § 8.'

"The court by these utterances, when considered in the light of the provisions of the Declaratory Judgment Act, found in § 1, dealing with 'Scope' as follows:

" 'Courts of record *within their respective jurisdictions* shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or· decree.' [Italics supplied.]

"And § 8, 'Supplemental Relief,' providing, that:

" 'Further relief based on a declaratory ·judgment or decree may be granted whenever necessary or proper. *The application therefor shall be by petition to a court having jurisdiction to grant the relief.* If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith,' holds that in exercising· the jurisdiction 'to declare rights, status, and other legal relations'—in granting purely declaratory relief—the question of the absence or not of other adequate remedies is not material. But we do not construe this language to mean that the Declaratory Judgment Act had the effect to obliterate the distinction between proceedings in equity and actions at law in giving coercive relief. [Italics supplied]." (236 Ala. at 304, 182 So. at 56)

In *Berman,* it appears that the court was saying that the effect of § 156 and § 163 is that purely declaratory relief may be granted in equity, although another adequate remedy exists at law; and also that the Declaratory Judgment Act does not abolish the distinction between law and equity with respect to supplemental coercive relief because § 163 requires that application for further relief shall be made *"to a court having jurisdiction to grant the relief."*

In *Berman,* this court said " 'This is a statutory jurisdiction, to be exercised in the cases and to the ends defined by statute, (and) *does not depend on the absence of other remedies. . . . .'* " Such is the effect of the 1947 amendment to § 167. This court recently said:

"[1] Since the 1947 amendment, supra, the fact that some other adequate remedy at law exists to settle the controversy is not a defense in a declaratory action. (Citations Omitted)" Employers. Ins. Co. of Alabama v. Cross, 284 Ala. 505, 508, 226 So.2d 161, 164.

See also: Alexander City v. Continental Ins. Co., 262 Ala. 515, 80 So.2d 523; Greenley v. Bynum, 266 Ala. 584, 97 So.2d

893; Hane v. Bell, 270 Ala. 82, 116 So.2d 590; Rogers v. Lumbermans Mut. Cas. Co., 271 Ala. 348, 124 So.2d 70.

Of the opinions cited and read in considering the instant case, as we understand them, no case holds that, because a declaratory proceeding is filed in the equity court, the equity court can grant relief which it cannot otherwise grant.

On the other hand, none of those cases holds that a bill in equity for purely declaratory relief cannot be maintained in equity solely because the bill prays for relief which the equity court cannot grant. This court has said:

"  .  .  .  .  A bill is not demurrable because it prays too much.  .  .  .  ." Booth v. Bates, 215 Ala. 632, 635, 112 So. 209, 211.

In affirming a decree overruling a demurrer to a bill to nullify certain deeds and transfers of personal property, this court said:

"The bill undertakes to have the benefit of section 7429, Code, to the effect that separate estate of a widow shall be taken into account in awarding to her dower and distribution in her husband's property. The bill shows that decedent left both lands and personalty (assuming that the gifts to the widow are vacated), and therefore section 7429, supra, applies. Herring v. Elliott, 218 Ala. 203, 118 So. 391. This section when it applies is a limitation on the widow's distributive share under section 7374. But the fact that complainant prays for more than he is entitled does not render the bill subject to demurrer, when the facts alleged show that he is entitled at least to a part of the relief especially embraced in the prayer. Sims Chancery Practice § 287 et seq., 428; McDonnell v. Finch, 131 Ala. 85, 31 So. 594." Borton v. Borton, 221 Ala. 544, 546, 130 So. 67.

See other cases cited in Ala. Digest, Equity, ☞138.

■ On the reasoning of the last cited cases, we hold that respondent is not entitled to transfer the instant cause to law on the ground that the bill prays for supplemental coercive relief which the equity court cannot grant, or on the ground that an adequate remedy is available at law. Although the equity court cannot grant the supplemental coercive relief prayed for, the equity court can grant the purely declaratory relief prayed for.

In a case decided in 1936, the court said:

"We cannot see that it is material whether the proceeding is begun on one docket or the other, so long as constitutional rights are preserved, including that of trial by jury. Such right does not include matters within the original jurisdiction of a court of equity, such as declaring disputed boundary lines. Yauger v. Taylor, 218 Ala. 235, 118 So. 271.

"The act here in question does not limit the jurisdiction to the equity court, but confers it upon a court of record. The effect, as we have said, is to give the courts of law and equity concurrent jurisdiction, so long as other constitutional rights are preserved.

"A case may arise under the act in which an action in common-law form is available against a defendant on account of an existing default, and in which defendant would be entitled to a jury trial. If proceeding for a declaratory judgment is begun in equity, and defendant wishes and demands a jury trial, pursuant to his right under the law or Constitution, the court could either transfer the cause to the law docket under section 6486, Code, or have a jury trial in equity under section 6631, Code, when the verdict would be as authoritative as at law, since it was a matter of right. Brintle v. Wood, 223 Ala. 472, 136 So. 803; Karter v. East, 220 Ala. 511, 125 So. 655; Hill v. Lindsey, supra [223 Ala. 550, 137 So. 395].

"A proceeding for a declaratory judgment under such circumstances is not within the original jurisdiction of the chancery court, and cannot be used to deprive one of a jury trial secured by the Constitution. Miller v. Gaston, 212 Ala. 519, 103 So. 541.

"This remedy is intended to be alternative, and not dependent upon an absence of other ordinary remedies, Borchard on Declaratory Judgments, pages 147, 148, provided in it constitutional rights are preserved." Tuscaloosa County v. Shamblin, 233 Ala. 6, 8, 169 So. 234, 236.

We are of opinion that the peremptory writ of mandamus should be denied, but deem it proper to refer to a quotation from Borchard and four cases relied on by respondent. The statement in Borchard, Declaratory Judgments, 2nd Edition, 1941, at page 548, recites:

" . . . . In many cases, such as breach of contract for special and personal services, with a covenant not to serve another, as in Lumley v. Gye (22 L.J.Q.B. 463 [1852]), a mandatory injunction or restraining injunction is not granted as a matter of policy, and a construction of the contract is therefore not obtainable in equity; but a declaratory judgment of the defendant's duty accomplishes most of the purpose desired by determining first whether there has been a breach or whether the excuse is unsustainable and, if so, putting the defendant on notice of the consequences. . . . ."

Lumley v. Gye, supra, and the related case of Lumley v. Wagner, 1 De.G.McN. & G. 604, were decided in 1852 and 1853. In Borchard, at page 129, something is stated of the history of declaratory procedure in England, to wit:

" . . . . Where there was no 'right' to consequential relief, no declaration would be made.[19] " The case cited at note 19 is:

"Rooke v. Lord Kensington, 2 K. & J. 753, 760, 69 Eng.Rep.R. 986, 989 (1856).""

It thus appears that by citing Lumley v. Gye, decided in 1852, in the statement at page 548, Borchard is saying that in times prior to the availability of declaratory procedure, a mere declaration of rights under a contract for personal service could not be made in equity because complainant could not show a right to consequential or coercive relief such as specific performance. At pages 129 and 130, Borchard, supra, it appears that declaratory relief, as it is now known, did not become generally available in England until after the Judicature Act of 1873 and adoption of Order XXV, Rule 5 of the Supreme Court Rules of 1883. As we understand him, Borchard is not saying that construction of a contract for personal service cannot now be made in a declaratory suit in equity. Borchard is not saying that equity can now grant specific performance of a contract for personal service. Neither is he saying that equity cannot declare rights under such a contract and at the same time refuse to grant specific performance of such a contract. On this interpretation, Borchard does not support respondent's contention that the equity court cannot grant purely declaratory relief in the instant case.

Respondent relies on four cases to support the proposition that the 1947 amendment to § 167 does not change the rule that declaratory relief in equity is available only in matters of equitable cognizance.

The first case is Moulton v. Langan, 285 Ala. 427, 233 So.2d 74, where the court held that a bill praying for declaratory relief and specific performance of a contract for personal service had no equity. The declaratory suit there had been filed subsequent to the filing of an action at law in which the subject matter of the action was a contract. The same contract was the subject matter of the subsequent declaratory suit in equity. The holding was that the declaratory suit could not supersede the prior action at law because all issues presented by the bill in equity for declaratory

relief could be determined in the pending law action. The court did not decide that the bill for declaratory relief could not be maintained in equity for purely declaratory relief if the prior action at law had not been pending. The court did decide that the subsequently filed bill in equity would not support a temporary injunction or a permanent injunction which would be the equivalent of a decree for specific performance.

The second case, North American Co. for Life, Acc. & Health Ins. v. Bolling, 275 Ala. 457, 156 So.2d 144, is similar to *Moulton*. In *Bolling*, the appeal was from a decree overruling a motion to dissolve a temporary injunction enjoining breach of a contract for personal services. This court held that the bill would not support a temporary injunction. This court did not hold that the bill could not be maintained in equity for purely declaratory relief.

The third case is Rinehart v. Reliance Life Ins. Co., 272 Ala. 93, 128 So.2d 503, wherein complainant, a taxpayer, sought to recover taxes it had paid under protest. This court said:

"[2] The remedy for refund of taxes illegally exacted of a taxpayer is prescribed by §§ 890 and 891, Title 51, Code 1940, as amended.

"That remedy is at law. Glass v. Prudential Ins. Co. of America, 246 Ala. 579, 22 So.2d 13, decided in 1945.

" . . . . . . . . . . .

"[3] But the 1947 amendment, supra, does not operate to confer upon an equity court jurisdiction of subject matter which it had not possessed theretofore. Love v. Rennie, 254 Ala. 382, 48 So.2d 458; Wolff v. Woodruff, 258 Ala. 1, 61 So.2d 69.

"[4] Under the 1947 amendment the taxpayer can proceed in a declaratory judgment proceeding to have determined his rights to a refund of taxes paid under protest, but he must proceed in a court of law." (272 Ala. at 94, 128 So.2d at 505)

§§ 890 and 891 conferred on the taxpayer a remedy that was not previously available to the taxpayer. In *Glass*, this court said:

" . . . . We would not . . . . in any manner infringe upon the integrity of Art. 1, § 14, of our Constitution, but . . . . we merely hold . . . . that a common-sense construction of the Constitution upholds a statute of this character. . . . . The question may be one not free from difficulty but we are not persuaded beyond a reasonable doubt of the invalidity of §§ 890 and 891, as amended." (246 Ala. at 586, 22 So.2d at 19)

In reaching this result, the court observed that §§ 890 and 891 " . . . . constitute a remedy in the nature of a declaratory judgment," and "There is no judgment rendered against the State. . . . . It is in substance and effect the same as a declaratory judgment . . . ."

The statute, §§ 890 and 891, conferred on the taxpayer a new and unusual remedy, not previously existing, to recover taxes illegally collected. The court held that in such a case the jurisdiction of the subject matter was conferred exclusively on a court of law and that the remedy could not be availed of in equity.

The fourth case is Love v. Rennie, 254 Ala. 382, 48 So.2d 458, where complainants sought a declaration that a paper writing, which purported to be a will which had not been admitted to probate, was ineffective to devise or bequeath any property of the purported testator. This court held that the equity court had no jurisdiction of the subject matter and dismissed the bill. It is apparent that neither the circuit court in equity nor the circuit court at law had jurisdiction to construe an unprobated will and declare rights under such a writing.

In the instant case, if the equity court does not have jurisdiction of the subject

**306**

matter, then the bill cannot be maintained in equity. The subject matter is a contract and the purely declaratory relief asked is to construe the contract and declare rights under the contract. Many cases granting a declaration of rights under various contracts have been entertained in equity since enactment of the Declaratory Judgment Act. § 157, Title 7, recites:

"Any person interested under a . . . . contract . . . . may have determined any question of construction or validity arising under the . . . . contract . . . . and obtain a declaration of rights, status, or other legal relations thereunder."

Contracts for personal service are not excluded from the effect of § 157, Title 7. As to the purely declaratory relief here sought, we are of opinion that the equity court has jurisdiction of the subject matter, to wit, the contract, and can grant such declaratory relief. Tuscaloosa County v. Shamblin, supra.

This court has held that:

"[3] The parties have a right to trial by jury of all issues of fact presented in declaratory judgment proceedings on the equity side if the same issues would be so triable when presented in common-law actions. (Citations Omitted)" Major v. Standard Accident Ins. Co., 272 Ala. 22, 24, 128 So.2d 105; Porter v. Alabama Farm Bureau Mut. Cas. Ins. Co., 279 Ala. 499, 187 So.2d 254.

No reason appears to show that the same rule does not apply here.

Counsel for the trial judge ask that we limit our decision to the question whether complainant is entitled "to file his bill for a declaratory judgment on the equity side of the court." We decide that complainant is so entitled. It may appear that we have not limited this opinion as counsel request. If we have not done so, it is because candor requires that we apprise the parties, the bench, and the bar of the reasons for reaching this decision. Without the reasons stated we could not reach this result.

Mandamus denied.

LIVINGSTON, C. J., and SIMPSON, BLOODWORTH and McCALL, JJ., concur.